UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
Case No. 2:14-cv-350-FtM-38DNF

| | |
|---|---|
| MICHAEL ANAGNOS, an individual )<br>      Plaintiff,          )<br>                                    )<br>vs.                               )<br>                                    )<br>                                    )<br>                                    )<br>THE NELSEN RESIDENCE, INC. and   )<br>JEROME VALENTA,                  )<br>      Defendants.           )<br>                                    )<br>_____ ) | **DEFENDANT'S RESPONSES TO<br>TO PLAINTIFF'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT** |

     COMES NOW, Defendant, Nelson Residencece, Inc ("NRI") and files its response to Plaintiff's Motion for Partial Summary Judgment and would state as follows:

     In response to the Plaintiff's motion, Defendant would state that the undisputed facts laid out to the Court by Defendant are in and of themselves disputed and raise a genuine issue of fact. The Plaintiff in his assertion of undisputed facts misleads court by taking the deposition quotes out of context to the question that was asked of NRI's president, Jerome Valenta. Specifically, the Plaintiff attempts to get the court to view the activities NRI is engaged in as "care" by quoting, "If they have a mental problem, we try to work with them. If they have a physical problem, we try to work with them." Plaintiff notably leaves out the context where the Defendant states that there is no income level or personal flaw which would exclude a person from residing at NRI. At minimum, Plaintiff's own assertions create an issue of material fact which would warrant denial of summary judgment.

**Response to Statement of Material Facts**

1. Plaintiff states Defendant is a "residential care facility for the mentally ill, disabled and aged located in Cape Coral, Florida". It is denied as there is no care provided. See Deposition transcript of Mr. Valenta (15:3-12) which states:

> **Q. What is the Haven of Divine Love?**
>
> **A. It's a facility that provides low-cost housing for low-income seniors and persons with limited disabilities.**
>
> **Q. You say "limited disabilities." What do you mean by that?**
>
> **A. Well, we're not equipped to provide assistance, you know, medical assistance for -- in other words, you have to be non-ambulatory (sic), or you know, you have to be able to care for yourself.**

2. It is admitted that NRI's president is Jerome Valenta and he has held that position from 2011 until present.

3. It is denied that Valenta uses NRI and another non-profit in Bakersfield, California to pay his personal expenses. See Deposition transcript of Mr. Valenta (44:7-25) which states:

> **Q. And I understand that Mr. Anagnos volunteered from you said about 2011, and that I understand continued through about to the middle point of 2014; is that 10 correct?**
>
> **A. If I recall sometime about the end of 2011 is when the board kind of said, "Look, he's doing -- he's really helping out especially when I'm out of town or whatever," and so we decided to, you know, forego his rent; in other words, instead of him paying rent, he was, you know, kind of working it off, and even though most months he -- you know, he didn't do as much work. I mean, it wasn't that much of a value to us, but again, we gave him, you know, the rent. <u>We also started -- one of things that we do have, and I do get -- I haven't for the last year or so -- is the board originally set up what we call a stipend for our personal expenses. I would</u>**

**get $300 a month, you know, for my shaving creams and for any personal items and whatever, and we gave Mr. A, you know…**

4. It is admitted that NRI's residents are "low-income seniors and persons with limited disabilities" however no care is provided. The residents must be able to care for themselves on their own.
5. It is admitted that NRI's mission is to "help the people who need help."
6. It is admitted that NRI gives work providing discounts to rent and Church open to the public at large.
7. It is admitted that NRI's residential demographics are "[r]ight now we're probably at about 70 percent disability versus senior, but we do have some senior disability people."
8. It is denied that NRI is a residential care facility. The only place we see the term "care" in on the web.
9. It is admitted that NRI's website specifically states "THE HAVEN OF DIVINE LOVE SENIOR CITIZEN AND DISABILITY CENTER IN CAPE CORAL FLORIDA (LEE COUNTY) IS A RESIDENTIAL CARE FACILITY."
10. It is admitted that NRI's website states that the actions of the City of Cape Coral, Florida have caused "denial of our providing the necessary religious and humanitarian counseling." NRI also states that the City of Cape Coral has "obstructed the ability to perform their religious duties of counseling and assisting those in need, causing irreparable psychological, emotional, mental, and physical damage to innocent parties."
11. It is admitted that NRI advertises its services and over half of the people that we have there come to NRI from other social agencies.

12. It is admitted that Valenta consistently refers to NRI as a "facility" however there are alternative definitions of the word "facility".

13. It is admitted that Ms. Sara Rodriguez swore that NRI is a "facility" and that NRI operates a "Senior and Disability Center" but there are no statements about providing care to the residents.

14. It is admitted that Ms. Rodriguez stated that "it sent many of the Disability residents into a panic about having to move from the enter. My husband and I saw and heard many Residents, especially those with mental disabilities, state how afraid they were of having to leave when we were handing out food donations". It is denied that any care was given to the residents. See Deposition transcript of Mr. Valenta (15:3-12) which states:

    **Q. What is the Haven of Divine Love?**

    **A. It's a facility that provides low-cost housing for low-income seniors and persons with limited disabilities.**

    **Q. You say "limited disabilities." What do you mean by that?**

    **A. Well, we're not equipped to provide assistance, you know, medical assistance for -- in other words, you have to be non-ambulatory (sic), or you know, you have to be able to care for yourself.**

15. It is admitted that the residents were concerned that public utilites would be shut off.

16. It is denied that Mr. Anagnos, needed assistance from anyone helping with his wheelchair. Plaintiff's exhibits do not cite or state that either. See (Ex. 12, Anagnos Rental Application; Ex. 13, NRI/Anagnos Lease and Ex. 7, Decl. of Anagnos)

17. It is admitted that Mr. Anagnos paid rent for "three, four, or five months, and then he was assisting as Mr. Valenta stated in his deposition.

18. It is admitted that Mr. Valenta stated Mr. Anagnos "was always helping out" and "pick up cigarette butts and clean up, and he picked up, you know, big, you know, bags of cement and bricks and did a lot of heavy work…" but was not a continuous list of activities that he was directed to participate in.

19. It is admitted that Mr. Valenta stated Mr. Anagnos "was very accommodating for about a year and a half to two years" and "was always helping out" but was not a continuous list of activities that he was directed to participate in.

20. It is admitted that so long as Mr. Anagnos was providing services to NRI, he did not have to pay rent. It is denied that Mr. Anagnos was one of the only people that Valenta let live at NRI rent-free.

21. It is admitted that Volunteer duties at NRI included picking up cigarette butts and trash, raking leaves, cleaning windows and repair or maintenance. It is also admitted that Mr. Anagnos also collected rent **one time** for NRI and prepared a late notice **one time** on behalf of NRI.

22. It is admitted that Mr. Anagnos was helping out and in return his rent was foregone.

23. It is admitted that the police report included that but it is denied that Mr. Valenta stated that. It was the officer's statement specifically.

24. It is denied that Mr. Valenta admitted to lacking first-hand knowledge as to the extent of Mr. Anagnos's duties because he is in Bakersfield, California most of each month.

25. It is admitted that NRI does not maintain any time records to reflect how many hours are worked by volunteers, including those worked by Mr. Anagnos.

**26.** It is admitted that Mr. Anagnos demanded to be paid and that Mr. Valenta told him volunteers do not get paid. Mr. Anagnos quit first and demanded wages by Attorney

Yormak after Anagnos quit and/or resigned volunteering.

27. See response.

**Standard**

Summary judgment is only proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Because the procedure deprives the parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by summary judgment. In addition, a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. To survive a motion for summary judgment, the non-moving party need only present evidence from which a jury might return a verdict in his favor. Lott v. Rigby, 746 F. Supp. 1084, 1084 (N.D. Ga. 1990)

   A. **NRI IS A NOT A COVERED ENTITY UNDER THE FLSA.**

The Plaintiff, in his motion alleges that NRI is a covered institution under the act. However, testimony and case law would indicate that there is an issue of material fact as to whether NRI is a covered entity.

    1. **The FLSA does not apply to NRI.**

Plaintiff alleges that NRI falls under 29 U.S.C. § 203(r)(2)(A) which provides that entities below are covered under the act,

> in connection with the operation of a hospital, an institution **primarily engaged in the care of the sick, the aged, the mentally ill** or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit).

The Nelson Residence, Inc. operates none of the entities above nor does it engage in activities substantially similar to the activities above.

Additionally, the Plaintiff cites to 29 C.F.R. § 776.23(c) to reference that any "employee who is employed in work closely or intimately related is covered. However, 29 C.F.R. § 776.23(c) specifically refers to the construction industry and those jobs closely related to it on "covered construction projects",

> All employees who are **employed in connection with construction work** which is closely or intimately related to the functioning of **existing instrumentalities and channels of interstate commerce or facilities for the production of goods** for such commerce are within the scope of the Act. Closely or intimately related construction work includes the maintenance, repair, reconstruction, redesigning, improvement, replacement, enlargement or extension of a covered facility. **If the construction project is subject to the Act**, all employees who participate in the integrated effort are covered, including not only those who are engaged in work at the site of the construction such as mechanics, laborers, handymen, truckdrivers, watchmen, guards, timekeepers, inspectors, checkers, surveyors, payroll workers, and repair men, but also office, clerical, bookkeeping, auditing, promotional, drafting, engineering, custodial and stock room employees.

### a. NRI is not a Covered Entity Under the FLSA Because It is not an Institution Primarily Engaged in the Care of the Aged, Mentally Ill and Persons with Disabilities, and therefore not a covered entity under the Act.

Determining whether an institution is engaged in the Care of the Aged, Mentally Ill and Persons with Disabilities is an issue of fact.

In determining that a defendants' employees were covered under the wage and hour provisions of the Act. The Court in, <u>Marshall v. Sunshine & Leisure, Inc.</u>, 496 F. Supp. 354, 356 (M.D. Fla. 1980), looked at the services offered by a rest home to determine if the defendant was "primarily engaged" in the care of the aged. "The personal services provided the residents of defendants' rest homes can be described as nothing other than care. The residents do not just receive meals and a place to sleep. Defendants' employees are available 24 hours a day to assist the residents in their most personal needs. That some of the residents may not need or request all of the services provided by defendants' employees does not affect the characterization of the services defendants make available to their residents. The employees can truly be termed their

"residents' keepers." *Id.*

The NRI is factually distinguishable from the "rest home" in the *Marshall* case. NRI is more akin to a group home than a facility engaged in the care of any individual. In, <u>Probert v. Family Centered Servs. of Alaska</u>, 651 F.3d 1007, 1012 (9th Cir. 2011), the court looked to the primary activity engaged by the defendant in determining that the group home was not a covered entity. "The FCSA Homes are very different from nursing homes and the related facilities listed in the handbook. The children who live at the FCSA Homes spend much of their time, perhaps a majority of their waking hours, elsewhere. They leave the Homes to attend school, participate in activities, and receive medical and psychological treatment. Residents of nursing homes are not necessarily confined completely to those facilities, but the expectation is that the vast majority of their time is spent there. Those facilities are also staffed with professionals, not simply house parents, and residents may be expected to receive substantially greater "care" in those facilities." *Id.*

In his deposition, Mr. Valenta testified that the NRI provided no care for the residents.

**Q. What is the Haven of Divine Love?**

**A. It's a facility that provides low-cost housing for low-income seniors and persons with limited disabilities.**

**Q. You say "limited disabilities." What do you mean by that?**

**A. Well, we're not equipped to provide assistance, you know, medical assistance for -- in other words, you have to be non-ambulatory (sic), or you know, you have to be able to care for yourself.**
**Q. So you're not a hospital?**

**A. Right. Or a hospital, yeah. We're not an assisted living facility. We basically provide the housing for people who are disabled but who can care for themselves.**

See Valenta Deposition Transcript attached to Plaintiff's Motion as Exhibit 4, pg. 15, lines 3-17.

The Plaintiff, in his analysis, misleads the Court in his reliance on <u>Brennan v. Harrison County, Mississippi</u>, 505 F.2d 901 (5th Cir. 1975). The Plaintiff urges the Court that Congress intended that "**engaged in the care**" should include providing affordable housing as a means to "care", however, the *Brennan* court looked specifically at the Mississippi Statute which provided, "It will be noted that this statute alludes to "the relief and support of the poor", but further provides that they shall be properly treated, that nurses and physicians may be supplied in such cases as may be deemed proper, and that medicines may be purchased." *Id. at 902*. Specifically, the purpose behind the creation of the "County Home" was to "care" for those people the statute alluded to.

The record is sufficiently clear that NRI does not provide "care" to any of it's residents. As such, the Court should deny Summary Judgment as a genuine issue of material fact exists as to whether NRI is a covered entity under the FLSA. Although there is one reference to "care" in the Defendant's website the record is sufficiently clear that NRI provides only a place to live.

B. **THE PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO DEFENDANT NRI'S FIRST AFFIRMATIVE DEFENSE ON COUNTS I & II**

Plaintiff alleges that he is entitled to summary judgment on Affirmative Defenses that were raised by Defendant as to counts I & II. In support of his assertion, Plaintiff urges the Court to grant judgment on an affirmative defense, rather than asking the Court to determine its applicability. Defendant, NRI's first and second affirmative defenses are that it is not a covered entity under 29 U.S.C. 213 and 215. Additionally, Defendant denied that it was a covered entity in its answer to Plaintiff's amended complaint and thus a genuine issue of material fact exists even if the Court deems the affirmative defense inapplicable or waived.

C. **SUMMARY JUDGMENT SHOULD BE DIENIED AS TO NRI'S AFFIRMATIVE DEFENSES TO THE FMWA CLAIMS BECAUSE NRI IS A COVERED ENTITY**

**UNDER THE FLORIDA CONSTITUTION.**

The Florida Constitution, Article X, Section 24 defines an employer as the same definitions as provided under the FLSA its implementing regulations. In response to this issue, Defendant reaffirms the notion that it is not a covered entity under the FLSA. Additionally, although Plaintiff claims that NRI is an employer under Article X as well as Florida Statute 448, there remains an issue of fact as to whether NRI is a covered entity under applicable statutes. Further, even if the Court determines that NRI is an entity within the definitions of Article X and/or Florida Statute 448, an issue of fact exists as to whether the Plaintiff was terminated, retaliated against, or resigned of his own volition.

Florida Statute 448 *et seq.* is an implementation statute for the implementation of s. 24, Art. X of the State Constitution. It is important to note that Plaintiff alleges a violation of the Florida Minimum Wage Act as set forth in its Amended Complaint "COUNT III- STATUTORY VIOLATIONS OF THE FLORIDA MINIMUM WAGE ACT (FMWA)- NRI & VALENTA" Further, in his prayer for relief, the Plaintiff specifically asks the Court for damages Enter judgment for the Plaintiff and against the Defendants on the basis of Defendants' willful violations of the Florida Minimum Wage Act.

The Florida Minimum Wage Act sets forth specific definitions with regards to who is an employer under the Act. The Act defines an "Employer" as any private individual, firm, partnership, institution, corporation, or association that employs ten or more persons. Fla. Stat. Ann. § 448.101.

Because the Plaintiff only sets for relief under the Florida Minimum Wage Act, the Court should view these allegations in a light favorable to NRI and Deny summary judgment.

**D.  THE PLAINTIFF MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II & IV**

**SHOULD BE DENIED BECAUSE THE RECORD PLAINLY REVEALS THAT TERMINATED HIS OWN EMPLOYMENT OR AT MINIMUM CREATES AN ISSUE OF MATERIAL FACT.**

As far as the Plaintiff's claims for Retaliation under Counts II and IV, the Court should deny summary judgment because an issue of material fact exists as to whether retaliation exists and whether the Act even covers Defendant as an employer under the act.

**Florida Statute 448.109**

In his amended complaint, the Plaintiff's Count IV for retaliation states that "Chapter 448.109 (3)(a), establishes in pertinent part: "An employer may not retaliate against an employee for exercising his or her right to receive the minimum wage. Rights protected by the State Constitution include the right to:...."" The Plaintiff grossly misquoted the Florida statute in his Amended Complaint and Summary Judgment should be denied as a matter of Law.

As a matter of law and Fact, the Plaintiff should be denied summary judgment as Florida Statute 448.109 (3)(a) reads,

> " **(a)**  Each year the Department of Economic Opportunity shall, on or before December 1, create and make available to employers a poster in English and in Spanish which reads substantially as follows:
> 1. File a complaint about an employer's alleged noncompliance with lawful minimum wage requirements.
> 2. Inform any person about an employer's alleged noncompliance with lawful minimum wage requirements.
> 3. Inform any person of his or her potential rights under Section 24, Article X of the State Constitution and to assist him or her in asserting such rights.
>
>> An employee who has not received the lawful minimum wage after notifying his or her employer and giving the employer 15 days to resolve any claims for unpaid wages may bring a civil action in a court of law against an employer to recover back wages plus damages and attorney's fees.
>> An employer found liable for intentionally violating minimum wage requirements is subject to a fine of $1,000 per violation, payable to the state.
>> The Attorney General or other official designated by the Legislature may bring a civil action to enforce the minimum wage.
>> For details see Section 24, Article X of the State Constitution.

As to Count IV, of Plaintiff's Complaint, the Court should deny Plaintiff's Motion for Summary Judgment as Section 448.109 does not deal with retaliatory discharge.

**29 U.S.C. § 215(a)**

Plaintiff seeks Summary Judgment as to Count II of his amended complaint, alleging specifically, that Defendant was "constructively" terminated from his employment in violation 29 U.S.C 215(a) (3). Summary Judgment is not proper because an issue of fact exists as to whether 1) Whether Plaintiff was engaged in a protected activity; and 2) whether Plaintiff was even terminated. It should also be noted that although Defendant hasn't specifically raised an affirmative defense of legitimate reason for termination, it is important to note that Plaintiff was not an employee, not terminated from any employment and even if the court views him as such, Defendant has specifically denied Plaintiff's allegation in paragraph 28 of his amended complaint, "The Defendants refused to provide a legitimate reason for the retaliatory treatment suffered by ANAGNOS" which the court should construe as an issue of material fact.

First, it appears that the Plaintiff alleges the protected activity he was engaged in under 29 U.S.C. 215(a) was that he "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

Although the Supreme Court has held that the notice provision of "filing a complaint," includes an oral complaint, the Court ruled that a complaint is "filed" when "a reasonable, objective person would have understood the employee" to have "put the employer on notice that [the] employee **is asserting statutory rights under the [Act]."** We agree. To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected

by the statute and a call for their protection." Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14, 131 S. Ct. 1325, 1335 (2011) **Emphasis added.**

It is undisputed that oral notice is equivalent to "filing a complaint" however, the Plaintiff had no rights under the Act as he was not an Employee under the Act. Although the Statute is broad to include "any person" who retaliates, the Court was clear that the complaint must be sufficiently clear for a "**reasonable employer** to understand it, in light of both content and context, as an assertion of rights protected…" Under the context of the Plaintiff's volunteer services with NRI, there is a genuine issue of fact as to whether the Plaintiff was asserting a right actually held by him under the Act.

Next, the Court must look at what retaliation was actually taken. Plaintiff alleges that he was "constructively terminated" However, NRI has denied that it had no legitimate reason for any alleged actions taken. Even more important is the fact that Plaintiff terminated his volunteer services with NRI on his own accord. During his deposition, Defendant explained that Plaintiff resigned from his volunteer services.

Q. So it's your testimony today that that statement in this police report is completely false?

A. It's not completely false, very erroneous or incomplete or misleading or incorrect in certain portions.

> "Q. What part is not false?
>
> A. What part is not false? Well, you know, Mr. A took the money from the resident, the $560 on 5/31, **the day that he says he's resigning as a volunteer**, and put in receipts saying that he bought an air-conditioner and he paid something else and took the money, you know, and showed receipts. He had no authorization whatsoever to collect the money, he had no authorization to go out and buy anything, you know, any appliance or whatever air-conditioning for his apartment or whatever….."

A Genuine issue of fact exists as to whether the Plaintiff was terminated for a legitmate purpose, voluntarily resigned, or even if he was an employee under the act and Summary judgment must

therefore be denied.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I served the Plaintiff a copy of the foregoing by delivering a copy to his attorney at the following email address: Benjamin H. Yormak, Counsel for Plaintiff at byormak@yormaklaw.com this 24th day of May, 2016.

```
                              Alan Hamisch, Esquire
                              Attorney for Defendant


                              By: /s/ Alan. F. Hamisch
                              Alan Hamisch, Esquire
                              Florida Bar No. 088647
                              501 Goodlette Frank Rd, Suite A-210
                              Naples, FL 34102
                              Tel: (239) 216-4783 Fax:(239) 206-4155
                              alan@hamischlaw.com
```