UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL ANAGNOS, an individual

       Plaintiff,

v.                                           Case No:  2:14-cv-350-FtM-38MRM

THE NELSEN RESIDENCE, INC.
and JEROME VALENTA,

       Defendants.
_____/

## ORDER[1]

This matter comes before the Court on Plaintiff, Michael Anagnos' Motion for Partial Summary Judgment (Doc. #88) filed on April 25, 2016. Defendants Nelson Residence, Inc. (NRI) and Jerome Valenta (NRI) filed their Response in Opposition (Doc. #92) on May 24, 2016. The Motion is fully briefed and ripe for the Court's review.

## FACTS

Plaintiff alleges that NRI is a residential care facility for the mentally ill, disabled, and aged located in Cape Coral, Florida. Defendant Jerome Valenta is the current president of NRI and has served in that position since 2011. NRI's residents are low income seniors, persons with mental illness, and persons with limited disabilities. NRI is not open to the public at large. Instead, the residents must be considered poor and needy seniors. NRI states its mission is to help the poor. Although approximately seventy

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

percent of NRI's residents have a disability versus being seniors, there are seniors at NRI that also have a disability.

Plaintiff alleges that NRI is a residential care facility and notes that Sara Rodriquez, a Deaconess at NRI, states that NRI is a facility and that NRI operates a senior and disability center. Valenta admits that NRI uses the term facility but claims that NRI is not a residential care facility, but merely a place where the poor, mentally ill, and disabled may have a place to live. Valenta states that NRI does not provide any care for its residents.

Plaintiff applied for residency at NRI on May 27, 2011, and became a resident on June 1, 2011. At the time, Plaintiff needed wheelchair assistance to get around. Plaintiff paid rent for approximately three to five months. After Plaintiff's health improved, he began to help out around NRI. Plaintiff's volunteer duties were described as picking up cigarette butts, cleaning up, watering plants, performing landscaping duties, assisting in repairs and maintenance and picking up heavier items like bags of cement and bricks. Additionally, Plaintiff may have shown apartments and aided in the collecting of rent on at least one occasion. Valenta admits that he lacked first-hand knowledge of Plaintiff's volunteer work because he lives in Bakersfield California and only visits NRI.

Due to Plaintiff's volunteer work around NRI, Valenta suspended his rent and he was allowed to live at NRI rent free. However, Plaintiff demanded that he be paid for the time he spent performing duties around NRI. Valenta admits that Plaintiff demanded pay for his work and that he refused to pay him telling him that NRI only had volunteers. On June 1, 2014, within a short period of time after he demanded wages, Valenta fired Plaintiff. Plaintiff subsequently informed Valenta in a note that he would no longer perform

volunteer duties at NRI.  After Valenta refused to pay Plaintiff and his subsequent termination from his volunteer work, Plaintiff stopped paying his rent.  Plaintiff was subsequently evicted from NRI.  As a result, Plaintiff brings the instant suit.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986).  Similarly, an issue is material if it may affect the outcome of the suit under governing law.  *Id.*  The moving party bears the burden of showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party.  *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial."  *Demyan v. Sun Life Assurance Co. of Canada*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991)).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. *Celotex*, 477 U.S. at 322-323. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992).

## DISCUSSION

Plaintiff argues that NRI is a covered entity under the FLSA. Plaintiff further argues that he is entitle to summary judgment against NRI's First Affirmative Defense, and NRI's Affirmative Defenses related to Florida's Minimum Wage Act (FMWA). Finally, Plaintiff avers he is entitled to summary judgment on Counts II and IV because the record reveals that NRI terminated him in retaliation for demanding wages. NRI states that summary judgment should be denied because there are genuine issues of material fact.

### (1) *Whether NRI is Covered by the FLSA*

Plaintiff argues that NRI is covered under the FLSA because it is an institution primarily engaged in the care of the aged, mentally ill, and persons with disabilities. NRI denies the FLSA applies to it.

The relevant question here is whether or not NRI is primarily engaged in the care of seniors, and disabled or mentally ill residents. Plaintiff argues that 29 U.S.C. § 203(r)(2)(A), which subjects non-profit care facilities to the requirements of the FLSA, applies to NRI. Section 203(r)(2)(A) reads in pertinent part:

4

> in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit).

While NRI admits that it has seniors, mentally ill, and some disabled residents, it disputes Plaintiff's allegations arguing that NRI is merely a housing facility and does not provide care for any of its residents.  During his deposition Valenta stated:

> Q. What is the Haven of Divine Love?
>
> A. It's a facility that provides low-cost housing for low-income seniors and persons with limited disabilities.
>
> Q. You say "limited disabilities." What do you mean by that?
>
> A. Well, we're not equipped to provide assistance, you know, medical assistance for -- in other words, you have to be non-ambulatory (sic), or you know, you have to be able to care for yourself.
>
> Q. So you're not a hospital?
>
> A. Right. Or a hospital, yeah. We're not an assisted living facility. We basically provide the housing for people who are disabled but who can care for themselves.

([Doc. #88-4](Doc. #88-4), p.15:3-17).

There is a genuine issue of material fact as to the whether or not NRI provides care for its residents.  Since the level of care provided by NRI will determine whether or not it falls under the FLSA as a care facility, summary judgment is not appropriate. *Miranda*, 975 F.2d at 1532.

### *(2) Affirmative Defenses*

Plaintiff argues that he is entitled to summary judgment on the First Affirmative Defense to Counts I and II.  Plaintiff also argues that summary judgment should be

5

granted as to NRI's First Affirmative Defense regarding Florida's Minimum Wage Act (FMWA) found in Counts III and IV. Count I alleges that that NRI violated the FLSA pursuant to 29 U.S.C. § 213; Count II alleges that NRI retaliated against the Plaintiff in violation of 29 U.S.C. § 215; Count III alleges NRI violated the FMWA; and Count IV alleges NRI retaliated under FMWA for Plaintiff's demand that he be paid wages for his time. The First Affirmative Defense asserts that NRI is exempt from the FLSA and the FMWA, and therefore, NRI is also exempt from the retaliation charge in Counts II and IV.

The Court has found that a genuine issue of material fact exists regarding whether or not NRI is exempt from the FLSA. Since the FMWA has the same requirements as the FLSA, there exists a genuine issue of material fact that would prevent the Court from granting summary judgment regarding the Affirmative Defenses. Thus, the Motion is due to be denied.

### (3) Retaliation Claims Under FLSA and FMWA

Plaintiff alleges that summary judgment should be granted as to Counts II and IV because the record reveals NRI constructively terminated him as a result of his demanding proper wages in violation of the FLSA and the Florida Minimum Wage Act (FMWA). NRI replies that Plaintiff terminated his own employment or in the alternative the FMWA does not deal with retaliatory conduct.

To establish a retaliation claim under the FLSA, a plaintiff must show that "any person . . . discharge[d] or in any other manner discriminate[d] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding [under FLSA]." 29 U.S.C. § 215(a)(3). "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: (1) [the plaintiff]

engaged in activity protected under [the] act; (2) [he] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca–Cola Co.,* 200 F.3d 1337 (11th Cir.2000).

NRI argues that summary judgment is not proper because Plaintiff was not an employee under the FLSA, and that there is a genuine issue of material fact with regards to whether or not Plaintiff was engaged in a protected activity, or whether he was even terminated at all.

### *(a) Whether Plaintiff Engaged in a Protected Activity*

In order to engage in a protected activity under the FLSA, Plaintiff would have to be an employee of NRI.  NRI argues that Plaintiff was not an employee as defined by the FLSA but a volunteer who could not be terminated in retaliation.  NRI also notes that Plaintiff quit performing his volunteer duties on his own rather than being terminated.

### *(i)  Whether Plaintiff was an Employee*

The statute defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In turn, the FLSA broadly defines "to employ" as "to suffer or permit to work," 29 U.S.C. § 203(g), and an "employer" as "any person acting ... in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). When analyzing whether an individual is an employee under the FLSA, the Supreme Court has held that courts should consider the FLSA's terms in light of the "economic reality" of the relationship between the parties. *Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 33, 81 S. Ct. 933, 936–37, 6 L.Ed.2d 100 (1961). The economic reality test inquiries into whether the alleged employer:

> (1) had the power to hire and fire the employees;

>   (2) supervised and controlled employee work schedules or conditions of employment;
>
>   (3) determined the rate and method of payment; and
>
>   (4) maintained employment records

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274, 1278 (S.D. Fla.), *aff'd,* 494 F. App'x 940 (11th Cir. 2012); *Molina v. S. Florida Exp. Bankserv, Inc.*, 420 F. Supp. 2d 1276, 1283–84 (M.D. Fla. 2006) (citing *Herman v. Express Sixty-Minutes Delivery Serv.,* 161 F.3d 299, 303 (5th Cir. 1998) (holding This "economic reality" or "economic dependence" inquiry involves a number of factors, including the degree of control exercised by the alleged employer; the extent of the relative investments of the worker and the alleged employer; the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; the skill and initiative required in performing the job; and the permanency of the relationship)).  No one isolated factor is determinative; instead, courts look to the "circumstances of the whole activity." *Molina*, 420 F. Supp. 2d at 1283–84.

NRI had the power to hire and fire.  While Valenta testified that he did not fire Plaintiff, he did tell Plaintiff he did not want him volunteering at NRI anymore. (Doc. #88-4, p.35:2-9).  It is also clear that Plaintiff performed a number of duties that were outside the scope of a normal lease.  Plaintiff would sweep up, take out garbage, pick up trash, rake leaves, clean windows, perform maintenance and repair work, and haul heavy items.  Plaintiff also collected rent for NRI from at least one resident. (Doc. #88-4, pp. 42:14-25, 43, 44:1-19).

In exchange for his volunteer work, Plaintiff was allowed to live at NRI rent free. (Doc. #88-4, pp. 42:14-25, 43, 44:1-19).  Plaintiff was also given a monthly stipend from the end of 2011 through the time NRI no longer wanted to use his volunteer services around the end of 2014. (Doc. #88-4, p. 44:20-25, 45:1-4). Additionally, Plaintiff was allowed to use NRI's vehicles, and was given a Walmart credit card. (Doc. #88, p. 51:1-9).  Plaintiff believed that he had regular work hours and told other residents that if anyone needed help with projects—like changing a light bulb—that he could not help them at night because he only worked from 9:00 to 5:00.  To the contrary, Valenta testified that he did not assign Plaintiff hours, nor did he know where Plaintiff got a regular schedule and work hours. (Doc. #88, p. 49:3-10).

When Plaintiff stopped volunteering at NRI he was again required to pay rent. Plaintiff stopped paying rent, NRI took him to court, and had him evicted. (Doc. #88-4, p.59:10-17).  Based upon the facts presented in the record, it appears Plaintiff was paid for his services with free rent and other benefits provided by NRI. *See Tony & Susan Alamo Foundation v. Secretary of Labor*, 171 U.S. 290, 292-93, 105 S. Ct. 1953, 85 L. Ed. 278 (1985) (holding that receipt of compensation in the form of benefits—food, clothing, shelter—instead of cash salaries was immaterial to the determination of whether or not volunteers were employees).  Since Plaintiff received free rent and other benefits from NRI for the work he performed, he has satisfied the definition of employee under the economics reality test. See *Genarie v. PRD Mgmt.*, 2006 WL 436733 (D.N.J. February 17, 2006) (holding that tenant who served as live-in maintenance worker was not a volunteer where she worked to maintain her living situation); *Griffin v. Daniel*, 786 F. Supp. 532, 539 (W.D. Va. 1991) (holding that "economic reality" of situation was that individual

who worked at his aunt's truck stop without pay was not a volunteer because he did so out of an obligation for the room and board he received).

### (ii) *Whether Plaintiff Engaged in a Protected Action*

Having determined that Plaintiff was an employee of NRI, the Court must now look to see if Plaintiff engaged in a protected activity. NRI claims Plaintiff failed to provide the requisite notice that he intended to pursue a claim under the FLSA or FMWA, therefore, he was not engaged in a protected activity. Plaintiff claims he put NRI on notice when he demanded wages for the hours he worked. To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met by oral complaints, as well as by written ones. See *Kasten v. Saint-Gobain Perfomance Corp.*, 563 U.S. 1, 14,131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011).

It is undisputed that Plaintiff confronted Valenta and demanded that NRI pay him for his work around the property. (Doc. #88-4, p. 66:18-25). It is clear from NRI's reaction that Plaintiff's demand for wages was sufficient to put NRI on notice that Plaintiff was attempting to enforce his rights under the statute. *Kasten,* 563 U.S. at 14. Since the United States Supreme Court held that the term "filing a complaint" includes oral complaints, it is evident from the circumstances of this case the Plaintiff was engaging in protected conduct.

### (iii) *Whether an Adverse Action was Taken*

Plaintiff alleges that he was fired from his position by NRI in retaliation for his demand for wages. NRI states that Plaintiff informed them in writing that he would no

longer volunteer at NRI. ([Doc. #88-4](), p.35:2-9). Given that NRI and Plaintiff present opposite scenarios of how Plaintiff's volunteer work ended, there is a genuine issue of material fact as to one of the elements needed to prove that an adverse action was taken. Since a genuine issue of material fact exists regarding an element of Plaintiff's retaliation claim, summary judgment is not warranted.

(b) *Retaliation under FMWA*

NRI avers that the FMWA deals with retaliation. Contrary to NRI's position, the statute reads in pertinent part:

> (3)(a) Each year the Department of Economic Opportunity shall, on or before December 1, create and make available to employers a poster in English and in Spanish which reads substantially as follows:
>
> NOTICE TO EMPLOYEES
>
> The Florida minimum wage is $ (amount) per hour, with a minimum wage of at least $ (amount) per hour for tipped employees, in addition to tips, for January 1, (year), through December 31, (year).
>
> The rate of the minimum wage is recalculated yearly on September 30, based on the Consumer Price Index. Every year on January 1 the new Florida minimum wage takes effect.
>
> **An employer may not retaliate against an employee for exercising his or her right to receive the minimum wage.** Rights protected by the State Constitution include the right to:
>
> 1. File a complaint about an employer's alleged noncompliance with lawful minimum wage requirements.
>
> 2. Inform any person about an employer's alleged noncompliance with lawful minimum wage requirements.
>
> 3. Inform any person of his or her potential rights under Section 24, Article X of the State Constitution and to assist him or her in asserting such rights

Fla. Stat. Ann. § 448.109 (emphasis added)[2].

Thus, the FMWA does indeed deal with retaliation claims. However, there exists a genuine issue of material fact regarding whether or not Plaintiff was terminated or resigned of his own volition. As such, summary judgment is improper.

Accordingly, it is now

**ORDERED:**

Plaintiff, Michael Anagnos' Motion for Partial Summary Judgment (Doc. #88) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of August, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[2] The Court notes that the language that specifically addresses retaliation is conspicuously left out of NRI's quotation of the statute. The Court would hope that such an oversight was merely a clerical error rather than a deliberate attempt to persuade the Court by leaving out a pertinent part of the law.